UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Viola Chambers,

        Plaintiff,

v.

HSBC Bank USA NA, et al.,

        Defendants.

_____/

Case No. 13-14451

Honorable Nancy G. Edmunds


### OPINION AND ORDER GRANTING THE HSBC DEFENDANTS' MOTION TO DISMISS [24], GRANTING THE SGH DEFENDANTS' MOTION TO DISMISS [37], AND DENYING PLAINTIFF'S MOTION TO STRIKE AND MOTION FOR SANCTIONS [43]

In this mortgage foreclosure case, Plaintiff Viola Chambers has filed suit against various defendants that either participated in the foreclosure upon and sheriff's sale of her mortgage on her condo in Novi, Michigan, or were tangentially related to an assignment involving the transfer of her mortgage to various entities.  Plaintiff has styled her case as a personal suit as well as a class action suit against all the defendants.[1]

---

[1]Although Plaintiff has styled her complaint as a class action complaint, the Court finds that she has not made sufficient allegations to sustain even her own claim, let alone a class action.  The Court therefore does not specifically address the class action aspect of Plaintiff's complaint.  Plaintiff's complaint sets forth allegations relating to her claim alone, and has not set forth the factual support for a class action claim.

Three motions are before the Court.[2]  The first is the HSBC Defendants' motion to dismiss.[3] (Dkt. 24, HSBC Defs.' Mot.)  The second is the SGH Defendants' motion for judgment on the pleadings.[4] (Dkt. 37, SGH Defs.' Mot.)  The last motion before the Court is Plaintiff's motion to strike the HSBC Defendants' motion to dismiss and motion for sanctions.[5]  (Dkt. 43.)

Because Plaintiff filed suit after Michigan's six-month redemption period and has not alleged the fraud necessary to set aside a completed foreclosure and extinguished redemption period, and because, even if fraud occurred in the foreclosure, Plaintiff has not alleged prejudice, the Court finds that Plaintiff cannot sustain any of her claims involving an improper foreclosure or foreclosure process or any request to undo the foreclosure. Because Plaintiff has not made sufficient allegations to hold any of the SGH Defendants liable, for they have shown that they were not the foreclosing party, the Court grants the

---

[2]Plaintiff's motion for remand (dkt. 22) and Susan C. Myers and Orlans Associates, P.C's motion to dismiss (dkt. 23) were also scheduled for hearing, but have been rendered moot by the Court's December 19, 2013 order. (Dkt. 34.)

[3]The HSBC Defendants are: HSBC Bank, USA, n/a/ as Trustee for Fremont Home Loan Trust 2006-B, Mortgage-Backed Certificates, Series 2006-B, Mortgage Electronic Registrations Systems, Inc. ("MERS"), Ocwen Loan Servicing, LLC (Ocwen), and Litton Loan Servicing, LP (LLS).

[4]The SGH Defendants are: Defendants Signature Group Holdings, Inc. (SGHI), Signature Group Holdings, LLC (SGHLLC), and Ms. Cynthia Van Patten.

[5]The Court noticed two other motions for hearing on this date: Plaintiff's motion to remand and Defendants Susan C. Meyers and Orlans Associations, P.C.'s motion to dismiss. (Dkt. 22, 24.) The Court finds that both motions are now moot, given the Court's order on dismissing fraudulently joined defendants. (Dkt. 35.) On December 19, 2013, in that order, the Court dismissed Randall S. Miller & Associates, P.C., Orlans Associates, P.C., Randal S. Miller, William J. Trudgeon, and K. Koronowski. (*Id.*) On December 24, 2013, the Court entered a stipulated order dismissing Defendants Orlans and Susan C. Myers. (Dkt. 35.)

relief they request.  The Court further agrees with all Defendants, that Plaintiff legally cannot sustain a conversion claim for real property, the Court therefore dismisses that claim.  And finally, because Plaintiff has only made conclusory allegations of a conspiracy and has provided no factual support for those allegations, the Court dismisses any conspiracy claim to which Plaintiff alludes.  The Court therefore finds that Plaintiff has no actionable claims.

The Court also DENIES Plaintiff's motion to strike and motion for sanctions.  The Court finds that the HSBC Defendants sufficiently complied with the Eastern District of Michigan's Local Rules.

## I. Facts

### A. Plaintiff had her son purchase the condo and execute the initial mortgage

On April 5, 2006, Plaintiff and her son, non-party Dell J. Chambers, purchased a residential condominium single-family home at 50633 Billenca Drive in Novi, Michigan. (Am. Compl. ¶ 48.)  Plaintiff and her son paid $583,294.00 for the condo.  (*Id.* ¶ 49.) The settlement charges, including closing costs, were $608,294.00.  (*Id.* ¶ 50.)  Plaintiff and her son financed the purchase in three ways: Plaintiff put down a $25,000.00 down payment from her personal resources; Plaintiff and her son borrowed $583,294.00 from non-party Fremont Investment and Loan (FILC), for which they executed their first promissory note, which was secured by the first mortgage; and Plaintiff and her son borrowed $166,635.00 from FILC, for which they executed a second promissory note, which was secured by a second mortgage.  (*Id.*)

On April 8, 2006, Plaintiff's son transferred his interest in the condo to Plaintiff by quitclaim deed.  (Am. Compl. ¶ 51.)

3

Plaintiff failed to pay her monthly mortgage installment payments on the first mortgage. (Am. Compl. ¶ 52.) She acknowledges that she defaulted and breached her mortgage obligations. (*Id.*) She adds that she last paid her mortgage on June 10, 2008, in the amount of $3,300.00 to LLS, FILC's new mortgage servicer. (*Id.* ¶ 53.)

## B.  Record chain of title, the assignments of the mortgage

On April 5, 2006, Plaintiff and her son executed a mortgage in favor of MERS as nominee for Fremont Investment & Loan. (Am. Compl., Ex. A, Ex. I.) On April 27, 2006, the mortgage was recorded with the Oakland County Register of Deeds. (*Id.*, Ex. A, Ex. J.) In March, 2007, MERS assigned the mortgage to its nominee, Fremont. (*Id.*, Ex. A, Ex. H.) That assignment was recorded. (*Id.*)

The HSBC Defendants represent that Fremont later assigned the mortgage to HSBC, but that the assignment and mortgage were not recorded.

On January 8, 2009, MERS assigned and recorded the mortgage to HSBC Bank USA, National Association as Trustee under the Pooling and Servicing Agreement dated as of August 1, 2006, Fremont Home Loan Trust 2006-B (HSBC Bank USA). (Am. Compl., Ex. A, Ex. J.) On July 12, 2012, HSBC Bank USA recorded an assignment indicating that it had assigned the mortgage to Defendant HSBC. (*Id.*, Ex. A, Ex. G.) On November 26, 2012, the HSBC Defendants represent that an affidavit of lost assignment was recorded, which clarified that Fremont had assigned the mortgage to Defendant HSBC.

## C.  Foreclosure proceedings as Plaintiff alleges in the complaint

On December 19, 2012, the Miller Law Firm, on behalf of HSBC as Trustee for the Second Trust, began non-judicial foreclosure proceedings against the condo. (Am. Compl.

4

¶ 55.)  Plaintiff states that HSBC published a forfeiture notice in the Oakland County News to effect the foreclosure by notice.  (*Id.*)

On January 22, 2013, the Oakland County Deputy Sheriff sold Plaintiff's real estate to HSBC, the Second Trust's trustee for $744,734.33.  (Am. Compl. ¶ 56.)

### D.  Plaintiff's allegations, claims, and requests for relief

In her complaint, Plaintiff sets forth a comprehensive list of allegations that she believes entitles her to a setting aside of the foreclosure.  Most generally, she alleges that during the foreclosure process that there were defects in the title making foreclosure impossible and, even though she is outside the redemption period, that she is entitled to undo the foreclosure because the parties fraudulently forced the foreclosure to proceed without the notice that Michigan law requires.

In Plaintiff's first count, she requests that the Court declare all the non-judicial real estate foreclosure proceedings that the Miller Law Firm prosecuted on HSBC's behalf null and void and "of no legal consequence whatsoever[.]" (Am. Compl. ¶ 5.)  Plaintiff also requests that the Court find that the sheriff's mortgage foreclosure deed issued on or after January 22, 2013, vesting the condo in HSBC, is null and void.  (*Id.*)

Plaintiff asserts she is entitled to the requested relief because:

(1) HSBC, the alleged foreclosing mortgagee, did not comply with Mich. Comp. Laws § 600.3201 et seq; and/or

(2) HSBC, the alleged foreclosing mortgagee, did not have standing to institute and prosecute non-judicial real estate foreclosure proceeding pursuant to Mich. Comp. Laws § 600.3204(3) because:

(a)     all of the assignments in the chain of title were not recorded; and/or

5

(b)    all of the assignments in the chain of title are invalid and voidable because they were not executed in the physical presence of two witnesses and a notary, as required by Mich. Comp. Laws § 55.285(25)(5).

Plaintiff states that, at some uncertain time, HSBC, through Ocwen, retained Miller Law Firm to conduct a non-judicial foreclosure of Plaintiff's condo.  (Am. Compl. ¶ 46.)  On December 19, 2012, Plaintiff states that the Miller Law Firm began non-judicial foreclosure proceedings against Plaintiff's condo.  (Am. Compl. ¶ 47.)

Plaintiff explains that two individual Defendants from the Miller Law Firm, Miller and Trudgeon, "failed to mail to Plaintiff . . . written notices containing the information specified in [] § 600.3205a(1)."  (Am. Compl. ¶ 60.)

Plaintiff states, on January 16, 2013, Trudgeon, in a sworn affidavit, declared that the written notice that § 600.3204(4)(a) requires was not necessary because Plaintiff had not claimed her condo as her primary residence.  (Am. Compl. ¶ 61.)

Plaintiff claims that, also on January 16, 2013, she declared under oath and filed with the Assessing Department of the City of Novi, a homeowner's Principal Residence Exemption Affidavit, in which she stated that her condo was exempt from taxation under § 211.7cc.  (Am. Compl. ¶ 62.)

Plaintiff alleges that Trudgeon falsely declared in the compliance affidavit that the condo "is not claimed as a Primary Residence[.]" (Am. Compl. ¶ 64.)  Plaintiff stresses that the proper term is "principal residence" rather than "primary residence."  (*Id.* ¶ 66.)

Plaintiff explains Defendants further violated her rights when Miller and/or Trudgeon failed to search the assessing department's records to determine whether Plaintiff had filed a Principal Residence Exemption Affidavit.  (Am. Compl. ¶ 67.)  That failure, Plaintiff

alleges, was a breach of the duty Defendants owed to Plaintiff and violated §§ 600.3205a(1) and 600.3204(4)(a).  (*Id.*)

Plaintiff alleges that Trudgeon committed perjury and violated §§ 565.451b, 750.423, and 55.309(49)(1)(b) when he swore in the compliance affidavit that Plaintiff's condo was not her principal residence exempt from the tax under § 211.7cc.  (Am. Compl. ¶70.)

Plaintiff alleges that she suffered damages resulting from the alleged false compliance affidavit. (Am. Compl. ¶ 74.)  Plaintiff alleges Defendants have improperly denied her her "statutorily protected right to apply for a modification of [her] delinquent mortgages, a right guaranteed by [] § 600.3205b(1)[.]" (*Id.*)  Plaintiff further alleges that all of the defendants "acting in concert together and with each other, willfully, knowingly and purposefully failed to comply with the mandatory notice provisions" of Michigan Compiled Laws §§ 600.3204(4)(a) and 600.3205a(1).  (Am. Compl. ¶ 59.)

Given the false affidavit, Plaintiff requests a declaratory judgment against Defendants HSBC, the Miller Law Firm, Miller, and Trudgeon, voiding the sheriff's sale and voiding the foreclosure by advertisement.  (Am. Compl. at 20.)  Plaintiff also requests that the Court order HSBC to file and record affidavits in every register of deeds in the state to expunge all sheriff's deeds on the mortgage sale of Plaintiff's condo.  (*Id.* at 21.)

Plaintiff's second count focuses on allegedly false and misleading declarations that occurred in the foreclosure notice of Plaintiff's condo that appeared in the Oakland County Michigan Press.  (Am. Compl. ¶ 76.)  Plaintiff contends that, on December 19, 2012, Miller or Trudgeon caused a foreclosure notice to be published in the Oakland County Michigan Press.  (*Id.*)  Plaintiff alleges that the following were false or misleading declarations: the "Assignment of Mortgage," the date that the Assignment of Mortgage was executed, the

7

date that the Assignment was recorded; and the incorrect liber and page numbers.  (*Id.* ¶

77.)  The entry reads:

> said mortgage was assigned to HSBC Bank USA, National Association, as Trustee for Fremont Home On Loan Trust 2006-B, Mortgage Backed Certificates, Series 2006-B, by an Assignment of Mortgage dated November 12, 2012 and recorded November 26, 2012 in Liber 45002, Page 93.

(Am. Compl. ¶ 78.)  Plaintiff claims that the correct name of the instrument that the Oakland

County Register of Deeds recorded on November 26, 2012, in Liber 45002, Page 93, is the

Affidavit of Lost Assignment.  (Am. Compl. ¶ 79.)

Plaintiff states that Ocwen, HSBC's "most recent mortgage servicer and Attorney-in-

Fact" had relevant information and documents relating to the mortgages on Plaintiff's

condo.  (Am. Compl. ¶ 80.)  Plaintiff asserts that, at some point in time, the Miller Law Firm

received from Ocwen "true and complete copies of the Ocwen/HSBC mortgage files."  (*Id.*

¶ 81.)

Plaintiff next states that an Ocwen employee instructed other employees to "draft a

recordable document, the Affidavit of Lost Assignment," in which the declarant swore under

oath that someone had lost or misplaced the original assignment of the mortgage on

Plaintiff's condo before the mortgage could have been recorded in the land records at the

Oakland County Register of Deeds.[6]  (Am. Compl. ¶ 84.)

Plaintiff alleges that Ocwen then mailed the Affidavit of Lost Assignment to the Miller

Law Firm and instructed it to record the affidavit if a search of the Ocwen/HSBC files and

---

[6]In this court, Plaintiff identifies two specific Ocwen employees, Arias and Alexander, who took part in the drafting and recording of the lost assignment note.

8

search of the land records revealed that the original assignment had not been recorded. (Am. Compl. ¶ 90.)

Plaintiff states that, after the Affidavit of Lost Assignment was recorded on November 26, 2012, it was mailed to the Miller Law Firm by the Oakland County of Deeds. (*Id.* ¶ 31.)

Plaintiff then alleges that, four months after the Ocwen employee drafted the affidavit of lost assignment, the same Ocwen employee drafted the Assignment of Mortgage Michigan, the third assignment. (Am. Compl. ¶ 92.) Plaintiff contends that the Ocwen employee "willfully, knowingly and purposefully swore in the Affidavit of Lost Assignment . . . that the Assignment of Mortgage Michigan, the 3rd assignment" "was lost or misplaced before being recorded." (*Id.* ¶ 94.)

Plaintiff claims that the Affidavit of Lost Assignment is not an assignment, because it does not clearly and unambiguously state or declare in writing in the body of the affidavit that the assignor, HSBC as Trustee under the Pooling and Servicing Agreement dated as of August 1, 2006, Fremont Home Loan Trust 2006 B (the first trust), is assigning Plaintiff's delinquent mortgage to the assignee, HSBC, as Trustee for Fremont Home Loan Trust 2006-B, Mortgage-Backed Certificates, Series 2006-B (the second trust). (Am. Compl. ¶ 97.) Plaintiff additionally argues that "neither the name of the assignor, nor the name of the assignee is set forth, stated or described in the Affidavit of Lost Assignment." (*Id.*)

Plaintiff then points to Michigan Compiled Law § 600.3204(3), which she states requires a record chain of title to exist before the date of a sale evidencing the assignment of the mortgage to the party foreclosing the mortgage. (Am. Compl. ¶ 99.) Plaintiff also points to two other Michigan statutes that prohibit false oaths or affidavits. (*Id.* ¶¶ 100, 101.)

9

Plaintiff alleges that Ocwen, HSBC's attorney in fact, failed to conduct a thorough search to determine whether the assignment was recorded.  (Am. Compl. ¶ 106.) Plaintiff alleges that Ocwen breached a duty owed to Plaintiff.  (*Id.* ¶ 108.)  Plaintiff further alleges that Trudgeon and/or Miller failed to search the Ocwen/HSBC mortgage files and/or the land records of the Oakland County Register of Deeds to determine if the Assignment of Mortgage had been recorded; or alternatively did not conduct a diligent search of the land records, before the Miller Law Firm caused forfeiture notices containing false and misleading information so that the non-judicial foreclosure proceedings could proceed against Plaintiff's condo.  (Am. Compl. ¶ 109.)

Plaintiff argues, because Defendant failed to comply with § 600.3204, et seq, that HSBC did not have standing to foreclose the delinquent mortgage, that she is entitled to a voiding of the foreclosure and sheriff's sale, and that she is further entitled to occupy her condo. (Am. Compl. ¶ 113.)

In Count III, Plaintiff alleges that Defendant HSBC could not have legally foreclosed on the mortgage because the second assignment in the chain of title, executed on December 19, 2008, is not a valid conveyance.  (Am. Compl. ¶ 126.)  Plaintiff argues that FILC's parent, FGC, had filed for bankruptcy on June 18, 2008 and, because of the bankruptcy, FILC could not purchase an asset, i.e. the mortgage, without prior approval of the bankruptcy court.  (*Id.*)  Plaintiff explains that FILC did not get prior approval from the bankruptcy court, and that, FILC's purchase from MERS and the sale is therefore an invalid conveyance.  (*Id.*)

Plaintiff again requests that the Court void the foreclosure and sheriff's sale. (Am. Compl. at 42.)

10

In Count IV, Plaintiff lists all of the individuals who signed any document that appears to be in the chain of title. Plaintiff alleges that MERS was not authorized to transact business, nor is it licensed as a mortgage lender. (Am. Compl. ¶ 153.) Plaintiff also takes issue with the robo-singing of the assignments that appeared in the chains of title. Plaintiff states that Defendants used robo-signing on the assignments. (*Id.* ¶¶ 153-57.)

Plaintiff alternatively argues that MERS knew or should have known that the first assignment was void and that it could not transfer title to and ownership of the first mortgage on Plaintiff's condo. (Am. Compl. ¶ 158.) Plaintiff also states that the first mortgage encumbered Plaintiff's real estate and therefore that title could not transfer. (*Id.* ¶ 159.) Plaintiff finally alleges that the person who drafted the first assignment, Myers, did not have the authorization to draft the assignment, and thus, because she did not have the authority, title could not transfer. (*Id.* ¶ 160.)

Plaintiff argues that the second assignment was invalid too. (Am. Compl. ¶ 161.) Plaintiff argues that the assignment was invalid because the notary who notarized the second assignment did not comply with statutory mandates and because the assignment was not signed in the physical presence of two people. (*Id.*)

Plaintiff argues that the third assignment is also invalid. (Am. Comp. ¶ 162.) Plaintiff maintains that the third assignment did not have the required signatures of two physically present persons. (*Id.*)

Given the alleged "robo-signing," Plaintiff requests that the Court find that the non-judicial real estate proceedings are of no legal consequence and void ab initio. (Am. Compl. ¶ 166.) Plaintiff also requests that the Court void the sheriff's deed and mortgage sale. (*Id.*)

11

In Count V, Plaintiff requests statutory conversion damages against Defendants pursuant to Michigan Compiled Law § 600.2919a.  (Am. Compl. ¶ 168.)

## II.   Standards of review

### A.  Rule 12(b)(6) motion to dismiss standard

The Sixth Circuit recently noted that under the United States Supreme Court's heightened pleading standard laid out in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Assoc.,* 714 F.3d 920, 924-25 (6th Cir. 2013) (internal quotations and citations omitted). The court in *Estate of Barney* goes on to state that under *Iqbal*, "[a] claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citations omitted). Furthermore, "[w]hile the plausibility standard is not akin to a 'probability requirement,' the plausibility standard does ask for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). If the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*, 550 U.S. at 570.  Finally, the Court must always keep in mind that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555.

### B.  Rule 12(c) motion for judgment on the pleadings standard

12

At any time after the pleadings close, but before trial commences, a party may move for a judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). The standard of review is the same *de novo* standard applicable to a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).

The Court reviews the motion in a light most favorable to the plaintiff, assumes that the plaintiff's factual allegations are true, and determines whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Id.* This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Court need not accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

If the court, however, considers matters outside the pleadings, it must treat the motion as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See Rubin v. Schottenstein, Zox, & Dunn*, 110 F.3d 1247, 1253 (6th Cir. 1997).

## III.   Analysis

Plaintiff requests that the Court undo the foreclosure and sheriff's sale. She argues that fraud tainted the foreclosure sale and that the HSBC Defendants could not foreclose on the mortgage because the proper chain of title did not exist. The Court finds that all the claims relating to the foreclosure fail because Plaintiff failed to take action before the redemption period expired. The Court also finds that, even if Plaintiff were able to challenge the title assignment by accepting her fraud allegations as true, she fails to allege that she was prejudiced by the supposedly-tainted foreclosure proceedings. With respect

13

to the SGH Defendants, the Court agrees that Plaintiff has not made any allegations against them that support an action.  The Court further finds that Plaintiff's conspiracy allegation is conclusory and contains no factual support.  The Court finally finds that Plaintiff's conversion claim fails as a matter of law because the Michigan foreclosure statute does not apply to real property.

### A. Michigan law requires a strong showing of fraud in the foreclosure process as well as a showing of prejudice before considering whether a plaintiff can unwind the sheriff's sale

Michigan statutory law governs non-judicial foreclosures/foreclosures by advertisement.  *Conlin v. Mortgage Electronic Registration Systems*, 714 F.3d 355, 359 (6th Cir. 2013) (citations omitted).  The statutory scheme provides both "certain steps that the mortgagee must go through in order to validly foreclose" and "controls the rights of both the mortgagee and the mortgagor once the sale is completed."  *Id.*  (citations omitted).  Once a sheriff's sale has taken place, Michigan law gives a mortgagor six months to redeem the property.  *Id.* (citing Mich. Comp. Laws § 600.3240(8)).  If the mortgagor does not redeem the property within the statutory redemption period, then the mortgagor's "right, title, and interest in and to the property" are extinguished.  *Id.* (citations omitted).

Under Michigan law, the only way to set aside a sheriff's sale after the redemption period has expired is for the mortgagor to make "a clear showing of fraud, or irregularity."  *Conlin*, 714 F.3d at 359 (citations omitted).  The fraud or irregularity required, though, "must related to the foreclosure procedure itself[,]" "not just any type of fraud will suffice."  *Id.* at 360 (citations omitted).  And fraud alone is also insufficient, for a plaintiff must show also that she was prejudiced by the fraud in the proceedings.  *Id.* at 361 (citation omitted).

### B. The Sixth Circuit's recent case law makes clear that Plaintiff cannot succeed on her claims, for she cannot challenge assignments to which she was not

14

**a party and, even if she could, she has not alleged the type of prejudice necessary to succeed with that argument**

Plaintiff argues that the assignments relating to her mortgage were void ab initio (i.e. from the outset) and therefore tainted the foreclosure sale, rendering it void.

Plaintiff is incorrect as to her interpretation of governing Michigan law.  The Sixth Circuit, in *Conlin v. Mortgage Electronic Registration Systems*, 714 F.3d 355 (6th Cir. 2013), addressed and rejected the arguments Plaintiff advances here.

In *Conlin*, the plaintiff argued that one of the defendants, U.S.Bank, could not legally foreclose on his property because U.S. Bank "was not the note-holder, mortgage-holder, or servicer," as required by Michigan law.  714 F.3d at 360.  The plaintiff asserted two bases on which he argued that U.S. Bank was not able to foreclose.  *Id.*  He first argued that an assignment made on behalf of MERS to U.S. Bank was forged or "robo-signed." *Id.*  He then argued that "MERS had no capacity to assign the [m]ortgage to U.S.Bank." *Id.*

The Sixth Circuit rejected both of the plaintiff's arguments.  *Conlin*, 714 F.3d at 361 (citations omitted).  In rejecting, the Sixth Circuit pointed to three cases that addressed the issues the plaintiff presented.  The court first pointed to its discussion in *Livonia Properties, Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F.App'x 97 (6th Cir. 2010).  *Livonia Properties*, the court stated, stood for the law that "a third party may only challenge an assignment if that challenge would render the assignment absolutely invalid or ineffective, or void." (all citations, quotations, and insertions omitted).  The Sixth Circuit then noted the Michigan Supreme Court's opinion in *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329 (Mich. 2012).  There, Michigan's supreme court "made clear that failure

15

to comply with the conditions set forth in Michigan's foreclosure-by-advertisement statute does not render flawed foreclosures void (i.e., void *ab initio*) but merely voidable." *Conlin*, 714 F.3d at 361 (citation omitted).[7]  The Sixth Circuit pointed out that, in Michigan, "defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*." *Id.* (citation omitted).  The Sixth Circuit then set forth controlling Michigan law. The Sixth Circuit held that, to succeed on a foreclosure-defect claim, "plaintiffs must show that they were prejudiced by [the] defendant's failure to comply [with Michigan's foreclosure by advertisement statute]." *Id.* (citation omitted).  To make such a showing, a plaintiff must show that he "would have been in a better position to preserve [his] interest in the property absent defendant's noncompliance with the statute." *Id.* (citations omitted).  The *Conlin* court found its holding in line with Sixth Circuit case law.  For, the court reasoned that, in a case where a foreclosed-upon plaintiff alleged that he did not receive notice pursuant to Michigan law, courts uphold completed foreclosure sales "[w]hen the mortgagor would have been in no better position had notice been fully proper and the mortgagor lost no potential opportunity to preserve some or any portion of his interest in the property[.]" *Id.* at 362 (citations omitted).

After reviewing the facts of its case, the *Conlin* court held that neither "robo-signing" nor "MERS's incapacity to assign" could support the plaintiff's action to set aside the sheriff's sale and undo the foreclosure.  714 F.3d at 362.  The Sixth Circuit reasoned, even if a defect existed in the assignment or MERS's incapacity to assign, that the plaintiff could

---

[7]The *Conlin* court supplied "void ab initio" and "voidable" definitions.  Void ab initio: "null from the beginning, as from the first moment when a contract is entered into."  Voidable: "valid until annulled; especially, (of a contract) capable of being affirmed or rejected at the option of the one of the parties."  714 F.3d at 361, n. 6.

not succeed on his claim, for he failed to show that he was prejudiced by the errors. *Id.* The court noted that the plaintiff had not shown that he would have "been in any better position to keep the property absent the defect[.]" *Id.* The court additionally noted that the plaintiff had not shown that he had been prejudiced in any other way and that he had also failed "to make the clear showing of fraud in the foreclosure process required to challenge the foreclosure after the expiration of the six-month redemption period." *Id.*

### C. *Conlin* governs this case, Plaintiff cannot succeed on her claims and she has not alleged prejudice

Despite Plaintiff's argument to the contrary, *Conlin* governs this case. Plaintiff alleges the same type of claims the *Conlin* plaintiff made–she alleges defects in the assignments and that she did not receive notice of the foreclosure proceedings or an opportunity to meet with a housing counselor. But, as in *Conlin*, Plaintiff did not redeem her property during the redemption period, she therefore has to allege prejudice.

Plaintiff argues that she meets the requirements under Michigan law to set aside the foreclosure sale. (Dkt. 33, Pls.' Resp. to the HSBC's Defs.' Mot. at 7.) She argues that she "specifically alleges that Defendants, acting in concert with their legal counsel, deliberately engaged in wrongful conduct that deprived her of notice about her right to seek a loan modification[.]" (*Id.*) She claims she was prejudiced by not having the "full opportunity to seek a loan modification or take other steps to save her home during the redemption period." (*Id.*) Plaintiff characterizes the prejudice as "the loss of a chance to seek a loan modification." (*Id.* at 8.)

Michigan Compiled Law 600.3204(4) prohibits a mortgagee from starting to foreclose on a property unless the mortgagee has mailed notice to the mortgagor and either the

17

mortgagor has requested a housing counselor meeting and the parties have completed their meeting or the time for a mortgagor to request a housing counselor meeting has expired.

Michigan Compiled Law 600.3205a(1) lists the requirements that a mortgagee's default notice to a mortgagor must contain.

Taking Plaintiff's well-pleaded allegations as true–that she did not receive notice and that Defendant HSBC did not have record chain of title when it foreclosed on Plaintiff's property–the Court accepts that defects existed in the foreclosure sale, rendering the foreclosure voidable.[8] But, the Court finds that Plaintiff still cannot succeed on her claim, because she has not alleged that she was prejudiced by the alleged defects.

Plaintiff alleges that she did not have the opportunity to participate in a loan modification meeting as set forth in the now-repealed Michigan Compiled Law § 600.3205b. That section provides the means by which a defaulted-upon borrower can contact a housing counsel to "participate in negotiations to attempt to work out a modification of a mortgage loan[.]" Mich. Comp. Laws § 600.3205b(1).

Here, even if Plaintiff did not receive the notice required, her sole allegation of prejudice–the inability to participate in a loan modification meeting–is insufficient to

---

[8]Plaintiff argues that HSBC, Ocwen, or their agents prevented Plaintiff from having all of the information which she was entitled to receive about the mortgage loan modification process and the nature of her rights and obligations during the redemption period. (Pl.'s Resp. to SGH Defs.' Mot. at 4.)

Plaintiff also argues that HSBC, Ocwen, or their agents were responsible for the deliberate filing of the false affidavit, which stated that Plaintiff's condo was not her principal residence and that, therefore, the Michigan foreclosure by advertisement process could go forward without providing the notice required by Michigan law. (Pl.'s Resp. to SGH's Mot. at 4-5.)

constitute the prejudice needed to set aside the foreclosure.  The Court first notes that she has simply alleged that she would be prejudiced and that she would have been in a better position to save her home had she participated in that modification meeting.  But, the Court finds that allegation conclusory.  Plaintiff does not allege that she had any means by which, or bargaining power, to even enter into a loan modification.  Plaintiff had not paid her mortgage for many years, and there is not even an allegation or a reasonable hint that, had she participated in the loan modification meeting, she would have received modification.  Plaintiff also presumably learned about the sheriff's sale at some time, and she has made no allegation that she attempted to stop the sale or had the means to.  The same presumption exists about her failure to redeem the property in the six-month redemption.  Plaintiff has not alleged prejudice.  Her complaint seeking relief against Defendants for the foreclosure process does not succeed.  Analogous case law in this district supports this decision.  *See Baker v. Bank of Am.*, 13-12474, 2013 WL 5945055, at * (E.D.Mich. Nov. 6, 2013) (Duggan, J.) (finding, even if there was actionable fraud in the foreclosure procedure, that the plaintiff failed to allege actionable fraud as required by *Kim* because he did not allege that the fraud impacted his ability to make timely mortgage payments and did not make allegations that would have shown that he would have been in a better position to preserve his interest in his property.").  *See also Wargelin v. Bank of Am.*, 12-15003, 2013 WL 5587817, at *5 (E.D.Mich. Oct. 10, 2013) (Borman, J.) (citations omitted) (noting that the plaintiff cannot allege prejudice resulting from a defendant's failure to complete a loan modification process.  The court noted that failure to comply with the loan modification process cannot prejudice the plaintiff because § 600.3205c does not require a defendant to give a plaintiff a loan modification.  The court pointed out that a

19

violation of § 600.3205c "only" provided a borrower with an opportunity to enjoin the foreclosure sale and turn a foreclosure by advertisement into a judicial foreclosure."). *And see Holliday v. Wells Fargo Bank, NA*, 2013 WL 3880211, at *6 (E.D.Mich. July 26, 2013) (Berg, J.) (citation omitted) (noting case law for proposition that a lender's failure to "properly" evaluate a borrower for a loan modification does not cause prejudice."). *And see finally Lopez v. Bank of Am., NA*, 920 F.Supp.2d 798, 803 (W.D.Mich. 2013) (Bell, J.) (holding that, even if the plaintiff did not receive the required mailed notice of the foreclosure by advertisement, she had constructive notice of her rights because the mortgagee published the foreclosure in the Detroit and she had actual notice of her right to request a loan modification well in advance of the foreclosure.).

### D. No allegations support a claim against the SGH Defendants; Plaintiff's conspiracy claim against all Defendants is wholly conclusory

The SGH Defendants argue that they have no interest in Plaintiff's condo, or the relevant mortgage in the lawsuit. (SGH Defs.' Mot. at 1.)  The SGH Defendants point out that Counts I-III do not assert any claims against them. (*Id.*)  The SGH Defendants state that, in Count IV, Plaintiff asserts a claim against Defendant SGHI and Defendant Van Patten. (*Id.*)  But the relief that Plaintiff requests, the SGH Defendants argue, "has no impact on or relationship with either SGHI or Ms. Van Patten." (*Id.*)

The SGH Defendants pull out the allegations in the complaint that relate to them.  The SGH Defendants stated that SGHI is the successor-in-interest to Fremont, who was the mortgage's original lender. (SGH Defs.' Mot. at 3.)  The SGH Defendants say that Fremont assigned its interest in the mortgage to HSBC Fremont Trust in January, 2009. (*Id.*)  At that time, they allege, SGHI no longer had an interest in the mortgage or property. (*Id.*)

The SGH Defendants state that SGHLLC never had any involvement with either the mortgage or the property.  (SGH Defs.' Mot. at 3.)  They allege that Plaintiff does not make any specific allegations relating to SGHLLC and add that "it is unclear" why Plaintiff named SGHLLC as a defendant.  (*Id.*)

As to Ms. Van Patten, the SGH Defendants state that she worked for Fremont from July, 2004 to July, 2008.  (SGH Defs.' Mot. at 3.)  They add that she never worked for either SGHI or SGHLLC.  (*Id.*)  And they finally state that the allegations against Ms. Van Patten relate solely to the March 5, 2007 assignment from MERS to Fremont, which Ms. Van Patten signed.  (*Id.*)

Plaintiff has responded to the SGH Defendants' motion.  (Dkt. 41.)  Plaintiff responds that the SGH Defendants' motion only addresses "part" of the complaint.  (Pl.'s Resp. to SGH Defs.' Mot. at 1.)  Plaintiff alleges that the "gravamen" of her complaint is that all of the defendants "are co-conspirators, who acting in concert with each other [] knowingly, wilfully, intentionally and deliberately engaged in a course of wrongful conduct that deprived [Plaintiff] (and others similarly situated) of their statutory right to seek a mortgage loan modification, thereby avoiding foreclosures."  (*Id.*)  Plaintiff explains that Defendants' fraudulent conduct prevented Plaintiff (and others similarly situated) from having the full opportunity to exercise their redemption rights and seek the modification of their mortgage loans.  (*Id.* at 1-2.)  Plaintiff requests that the Court deny the SGH Defendants' motion because they mischaracterize Plaintiff's claims.  (*Id.* at 2.)

Plaintiff attempts to distinguish her argument.  She states that "some or all" Defendants formed the deliberate plan to deprive Plaintiff of notice.  (Pl.'s Resp. to SGH's

Mot. at 5.)  Plaintiff also states that, particularly the moving SGH Defendants "engaged in a course of conduct that obscured the chain of title in the public record." (*Id.*)

Plaintiff maintains that a crucial part of her case she "alleges that the movants were involved in a scheme to issue fraudulently constructed mortgage-backed securities; and that this fraud included filing falsified documents in the public record that described a recorded [] chain of title that did not exist." (Pl.'s Resp. to SGH's Mot. at 6.)

Plaintiff alleges that she asserts claims that show "a systematic course of conduct designed to deprive [her] of her right to exercise all of her rights available to her in the redemption process." (Pl.'s Resp. to SGH Defs.' Mot. at 8.)  Plaintiff also alleges that the deprivation prejudiced her "by concealing the fact that she had a right to seek a mortgage loan modification, as an alternative to foreclosure." (*Id.* at 10.)

The only claim for which the SGH Defendants could be held liable is a conspiracy claim.  But here, Plaintiff has only offered conclusory allegations to support any supposed connection between Defendants.  Plaintiff offers no factual allegations from which the Court could draw a reasonable inference that Defendants conspired together to deny her of her rights.  The Court dismisses any conspiracy claim against Defendants.

### E.  Michigan's statutory conversion statute does not apply to real property

The HSBC Defendants and the SGH Defendants argue that Plaintiff cannot succeed on her conversion statute because Michigan's conversion statute only applies to personal property and not real property.  (Def. HSBC's Mot. to Dismiss at 15-16; SGH Defs.' Mot. for J. at 8-9.)

They are correct.  Michigan Compiled Law § 600.2919a is Michigan's conversion statute.  The statute provides for the recovery of treble damages and attorneys' fees for the

22

improper conversion of personal property.  Mich. Comp. Laws § 600.2919a.  The statute, though, does not apply to real property, such as Plaintiff's condo.  *See Dardini v. Chase*, 12-12559, 2013 WL 1747825, at * (E.D.Mich. Apr. 23, 2013) ( Cox, J.) ("Under Michigan law, a claim for conversion only applies to personal property, not real property.") (citations omitted).

The Court dismisses the conversion claim.

### F.  The Court denies Plaintiff's motion to strike the HSBC Defendants' motion to dismiss and Plaintiff's request for sanctions

Plaintiff has filed a motion to strike the HSBC Defendants' motion to dismiss and motion for sanctions.  (Dkt. 43.)  Plaintiff argues that the Court should strike the HSBC Defendants' motion to dismiss because their counsel did not comply with the Eastern District's Local Rule requiring a party to contact an opposing party to seek concurrence with a motion and explain the legal basis for that motion before filing the motion.  E.D. Mich. LR 7.1(1)(2).  Plaintiff also alleges that the HSBC Defendants violated Local Rule 7.1(d)(2), which requires a statement of issues presented, which the HSBC Defendants' motion lacked.  (Pl.'s Mot. at 2.)

Plaintiff has attached an email between the HSBC Defendants' counsel and him. (Pl.'s Mot., Ex. A.)  In the thread, on November 25, 2013, HSBC Defendants' attorney emailed Plaintiff's counsel and simply stated, "[i]n accordance with local rules, please accept this email as a request for concurrence in a motion to dismiss the Amended Complaint."  Plaintiff's counsel responded to that email by stating, "[c]oncurrences denied." (*Id.*)

23

The HSBC Defendants have responded.  (Dkt. 45.) They argue that they complied with the rules, corrected their errors, and did not knowingly violate the court rules.  (*Id.*) They additionally argue that no sanctions are appropriate because Plaintiff did not comply with the Rule 11 "safe harbor" provision, requiring Plaintiff to serve her motion for sanctions on Defendant twenty-one days before filing the motion on the docket.  Fed.R.Civ.P. 11(c).

The Court denies Plaintiff's motion.  As to the concurrence argument, the Court finds that the HSBC Defendants' counsel could have been more thorough about explaining the legal basis for their motion.  But the Court also finds that her explanation that she was filing a motion to dismiss is minimally sufficient–a motion to dismiss inherently attacks the validity of the claims.  The Court notes that Plaintiff's counsel did not, after receiving opposing counsel's email, object to the failure to explain the legal issues in the motion.

As to the statement of issues argument, Plaintiff has attached an email thread showing that the HSBC Defendants' counsel acknowledged that she did not prepare a statement of issues, and that she filed a statement of issues for the Court to consider. (Pl.'s Mot., Ex. B.)  The email thread also shows that HSBC Defendants' counsel again requested concurrence, in light of Plaintiff's counsel review of the motion.  (*Id.*)

The Court will not punish the HSBC Defendants' counsel.  Defense counsel admitted her mistake and corrected it quickly.  While the Court hopes that parties will comply with local rules from a case's beginning, it will not punish parties for admitting errors and quickly correcting them.

The Court DENIES Plaintiff's motion and DENIES both parties' request for attorneys's fees.

## IV.  Conclusion

24

For the above-stated reasons, the Court GRANTS the HSBC Defendants and the SGH Defendants' motions to dismiss.  (Dkt. 24, 37.)  Plaintiff has not stated a claim on which the Court can grant relief. The Court will therefore dismiss this case.  The Court DENIES Plaintiff's motion for sanctions and motion to strike.  (Dkt. 43.)

So ordered.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  April 11, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 11, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager